IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0171
════════════
 
Southwestern Bell Telephone 
Company, L.P., 
d/b/a SBC Texas, 
Petitioner,
 
v.
 
William C. Mitchell, 
Beneficiary of 
Louise Mitchell, Decedent, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued March 23, 
2006
 
Chief Justice Jefferson, joined by Justice O’Neill and Justice Medina, dissenting.
 
            
As I noted in dissent six years ago, I believe Downs was wrongly decided. 
Continental Casualty Co. v. Downs, 81 S.W.3d 
803, 808 (Tex. 
2002) (Jefferson, J., dissenting). Echoes of my dissent ring in the 
Court’s decision today, but the vindication associated with the Court’s ruling 
comes at too high a price. A dissent does many things—it pinpoints perceived 
faults in the Court’s opinion, it speaks to a future Court, it may suggest a 
legislative fix—but it is not the law. The Downs Court declared the statute’s 
meaning even if a subsequent Legislature determined that it misconstrued 
legislative intent. A 
Court
’s decision on statutory construction is not 
infallible, but it must be final so that Texas citizens know how to conduct their 
affairs and can engage the political process to modify policy that has 
purportedly gone awry. Such is the case here. To continue to press a dissent 
after the Legislature has had occasion to change the law essentially refutes the 
constitutional principle, laid down in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 178 (1803), that the Court ultimately 
declares the law’s meaning. 
            
 Downs stated the law, and 
we should not so quickly cast it aside. Dickerson v. United States, 530 
U.S. 428, 443 (2000)(“Whether or not we would agree with Miranda’s 
reasoning and its resulting rule, were we addressing the issue in the first 
instance, the principles of stare decisis weigh 
heavily against overruling it now.”). The Legislature altered the law as 
announced in Downs, but Downs 
still governs cases filed before the legislative amendment. Because the Court 
overrules Downs, and because I would not apply Downs prospectively only, I respectfully dissent. 

I
Overruling Downs
            
Stare decisis has its greatest force in 
cases involving statutory construction. Grapevine Excavation, Inc. v. 
Maryland Lloyds, 35 S.W.3d 1, 5 (Tex. 2000). “More 
practically, it results in predictability in the law, which allows people to 
rationally order their conduct and affairs.” Id. Thus, “‘in most matters it is more 
important that the applicable rule of law be settled than that it be settled 
right.’” John R. Sand & Gravel Co. v. United States, 552 
U.S. ___, ___ (2008) (quoting 
Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406 
(1932) (Brandeis, J., dissenting)). A willingness to abandon precedent merely 
because we no longer believe the decision is correct “substitute[s] disruption, 
confusion, and uncertainty for necessary legal stability.” Id.; see also Weiner v. Wasson, 900 S.W.2d 
316, 320 (Tex. 
1995)(noting that “if we did not follow our own decisions, no issue could ever 
be resolved” and cautioning that “[t]he potential volume of speculative relitigation under such circumstances alone ought to 
persuade us that stare decisis is a sound 
policy”). 
            
Downs, a 5-4 decision, was thoroughly briefed (including 
submissions from the Texas Workers’ Compensation Commission and a chorus of 
other amici, at least one of which also urges us today 
to overrule the decision), and it was carefully considered. Bell makes a number of arguments for overruling 
Downs, most of which were raised and, to my dismay, rejected in 
Downs. The only new reason advanced is 
that the Legislature amended section 409.021 nine months after our decision. 
That is enough, says Bell, to conclude that 
Downs was “manifestly erroneous.” While 
it is true that the Seventy-Eighth Legislature amended section 409.021 in 2003, 
its actions provide no insight into the Seventy-First Legislature’s intent when 
enacting the law some fourteen years earlier. Massachusetts v. EPA, 549 
U.S. 497, ___ (2007) (noting that what subsequent Congresses have done “tells us 
nothing about what Congress meant” when it previously amended the statute at 
issue); United States v. Price, 361 U.S. 304, 313 (1960) (holding that 
“the views of a subsequent Congress form a hazardous basis for inferring the 
intent of an earlier one”); Rowan Oil Co. v. Tex. Employment Comm’n, 263 S.W.2d 140, 144 (Tex. 1953) (observing that 
“neither does one session of the Legislature have the power to construe the Acts 
or declare the intent of a past session”); see also Texas Workers’ 
Compensation Act, 71st Leg., 2d C.S., ch. 1, § 
5.21(a), (b), 1989 Tex. Gen. Laws 1, 51. Moreover, even in the face of swifter 
and clearer subsequent legislative action, we have nonetheless abided by our 
prior decisions. See Storage & Processors, Inc. v. Reyes, 134 S.W.3d 
190, 192 (Tex. 2004) (noting that “[a]lthough the 
Legislature ten weeks later amended the Labor Code to prohibit pre-injury 
waivers, Lawrence remains the law for those claims, like Reyes’, brought 
by workers who both signed non-subscriber agreements and suffered injury before 
[the amendment]”).
            
Legislatures write statutes; courts construe them. Cf. The Federalist No. 78, at 466 
(Alexander Hamilton) (Clinton Rossiter ed., 1961)(“The 
interpretation of the laws is the proper and peculiar province of the courts.”). 
We did so in Downs, and subsequent 
legislative action should not affect our construction. This is not to suggest we 
are infallible. When there are “compelling reasons” for doing so, Weiner, 
900 S.W.2d at 320, we can, and should, reexamine our decisions, Gutierrez v. 
Collins, 583 S.W.2d 312, 317 (Tex. 1979) (“Stare decisis prevents change for the sake of change; it does 
not prevent any change at all.”). But when the principal arguments for 
overruling a case are the same contentions we rejected the first time around, we 
should not be so quick to reconsider. In overruling Downs, the Court does 
a disservice to those who abided by the decision (as well as Continental 
Casualty, the Downs petitioner) and 
trades stability for disruption, confusion, and uncertainty. John R. Sand 
& Gravel Co., 552 U.S. at ___. Today’s decision 
encourages the very sort of “speculative relitigation” 
we warned against in Weiner. We should not abandon stare decisis principles here. 
II
Non-retroactive Application
            
Nor would I hold, as Bell urges, that 
Downs should be applied prospectively 
only. As a rule, our decisions apply retroactively. Elbaor v. Smith, 845 S.W.2d 240, 250 
(Tex. 1992). 
Nevertheless, we have long recognized narrow exceptions to this rule—largely in 
common-law cases regarding torts and contracts. See, e.g., Felderhoff v. Felderhoff, 473 S.W.2d 928, 933 (Tex. 1971) (limiting prospective application of new 
tort-liability rule); Pollard v. Steffens, 343 
S.W.2d 234, 238 (Tex. 1961) (expressing contrary presumption of 
non-retroactivity in contracts). In 1992, we adopted the Supreme Court’s test 
articulated in Chevron Oil Co. v. Huson, 404 
U.S. 97, 106–07 (1971), to determine when such exceptions should apply. See 
Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood 
Ind. Sch. Dist., 
826 S.W.2d 489, 518–21 (Tex. 1992).
            
Since our adoption of the Chevron Oil test, however, the Supreme 
Court explicitly overruled it as it applies to constitutional decisions and 
suggested that prospective application was not only wrong as to constitutional 
decisions, but contrary to the role of the judiciary. The Court stated:
 
When this 
Court applies a rule of federal law to the parties before it, that rule is the 
controlling interpretation of federal law and must be given full retroactive 
effect in all cases still open on direct review and as to all events, regardless 
of whether such events predate or postdate our announcement of the rule . . . . 
[W]e can scarcely permit the substantive law [to] shift and spring according to 
the particular equities of [individual parties’] claims of actual reliance on an 
old rule and of harm from a retroactive application of the new rule.
 
 
Harper v. 
Va. Dep’t of Taxation, 509 U.S. 86, 97 (1993) (internal 
quotation marks omitted). Specifically, the Court recognized that “‘the nature 
of judicial review’ . . . strips [courts] of the quintessentially ‘legislat[ive]’ prerogative to make 
rules of law retroactive or prospective as we see fit.” Id. at 95 (quoting Griffith v. Kentucky, 479 
U.S. 314, 322 (1987)). As Justice 
Scalia wrote in a concurring opinion: “Prospective 
decisionmaking is the handmaid of judicial activism, 
and the born enemy of stare decisis. . . . The 
true traditional view is that prospective decisionmaking is quite incompatible with the judicial 
power, and that courts have no authority to engage in the practice.” Id. 
at 105–106 (Scalia, J., concurring) (emphasis 
omitted); see also Hulin v. Fibreboard Corp., 178 F.3d 316, 333 (5th Cir. 1999) 
(noting that the Supreme Court has “substantially reject[ed] . . . departures 
[from the retroactivity doctrine] and return[ed] to the general rule of 
adjudicative retroactivity, leaving only an indistinct possibility of the 
application of pure prospectivity in an extremely 
unusual and unforeseeable case.”).
            
Even if Chevron’s rule is still viable, applying it here would 
ignore the Legislature’s role in setting a statute’s effective date. Although a 
legislature cannot interpret the law, see Rowan Oil, 263 S.W.2d at 
144 (“one session of the legislature [does not] have the power to . . . declare 
the intent of a past session”), it can establish the effective date of a law it 
enacts—and, subject to constitutional restraints not raised here, can make that 
law retroactively effective if it so chooses. See Rivers v. Roadway Express, 
Inc., 511 U.S. 298, 313 (1994) (“[The Legislature] may even, within broad 
constitutional bounds, make such a change retroactive and thereby undo what it 
perceives to be the undesirable past consequences of what it perceives to be a 
misinterpretation of its work product. No such change, however, has the force of 
law unless it is implemented through legislation.”). In this case, the 
Legislature was clear:
 
This Act 
takes effect September 1, 2003, and applies only to a claim for workers’ 
compensation benefits based on a compensable injury that occurs on or after that 
date. A claim based on a compensable injury that occurs before the effective 
date of this Act is governed by the law in effect on the date the compensable 
injury occurred, and the former law is continued in effect for that purpose. 

 
 
Act of May 28, 
2003, 78th Leg., R.S., ch. 1100, § 2, 2003 Tex. Gen. 
Laws 3161, 3162 (emphasis added). Thus, the Legislature chose not to disrupt the 
law in effect prior to September 1, 2003—the law as interpreted by this Court in 
Downs, 81 S.W.3d at 804. The Legislature having made that choice, the 
Court should not disturb it. See Lasater v. Lopez, 217 S.W. 373, 376-77 (Tex. 
1919) (Courts “violate their true powers and endanger their own authority 
whenever they undertake the legislative role[.]”). 
            
 “It is not the duty of the court to write the laws of our state, 
but the proper function of the courts is to enforce the laws as made by the 
Legislature.” Cent. Ed. Agency v. Ind. Sch. 
Dist., 254 S.W.2d 357, 361 (Tex. 1953). In Downs, this Court did just 
that, thereby announcing what section 409.021 of the Workers’ Compensation Act 
had always meant. See Rivers, 511 U.S. at 312-13 (“A judicial 
construction of a statute is an authoritative statement of what the statute 
meant before as well as after the decision of the case giving rise to that 
construction.”). I would reject Bell’s argument that Downs not be given 
retroactive effect.
III
Conclusion
            
The Court holds today that, “without violating the principles of stare 
decisis,” it may overturn very recent precedent 
construing a statute. Ironically, those principles counsel just the opposite. 
When we observe the time-honored tradition of adherence to precedent, 
particularly in statutory cases, the democratic process generally works as 
intended. It worked here. The Court declared the law in Downs. Though I 
believed then (and do now) that the Court’s statutory analysis was flawed, the 
Downs holding nevertheless bound all litigants. It should also bind the 
Court. It was entirely appropriate, of course, for a subsequent Legislature to 
revise the statute. But the fact that the Legislature changed the law does not 
alter its former validity. Otherwise, the force of any prior decision in which 
we have determined statutory meaning is subject to change, threatening the law’s 
stability. I would affirm the court of appeals’ judgment. 
 
                                                                        
­­­­­­­­­_________________________________
                                                                        
Wallace B. Jefferson
                                                                        
Chief Justice
 
 
Opinion delivered: December 19, 2008